**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GLEN RUSHEFSKY, on behalf of himself and all Others similarly situated,**<br>**Plaintiff,**<br>**v.**<br><br>**ABC HOLDCO LLC,**<br>**Defendant.** | **Docket No.**<br><br>**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiff, GLEN RUSHEFSKY ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against ABC HOLDCO LLC, ("ABC HOLDCO" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its e-commerce Website, www.abchome.com is accessible to blind and visually impaired individuals.

2. Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. 284906. According to a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. As documented in Dr. Mendel's report, Mr. Rushefsky suffers from profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both federal and New York State criteria for legal blindness. Dr. Mendel further states that Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing faces, navigating unfamiliar environments, or visually interpreting digital

interfaces, and recommends 24-hour supportive care due to the substantial risks posed by his condition. (See Exhibit A, Medical Documentation, in re: Glen Rushefsky)

3. Because of his permanent and irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, NVDA can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site unusable for blind users.

4. Defendant ABC HOLDCO LLC, headquartered at 888 Broadway, New York, NY 10003, owns, operates, and controls the commercial retail brand ABC Carpet & Home, including its fully interactive e-commerce website www.abchome.com, which markets and sells luxury home furnishings, rugs, décor, textiles, and related products to consumers throughout the United States, including New York. ABC Carpet & Home is a high-revenue enterprise generating approximately $93.3 million annually and is responsible for ensuring that its Website complies with federal, state, and local accessibility laws.

5. On multiple occasions in 2026, including most recently in September 2026, Mr. Rushefsky visited www.abchome.com using NVDA with the intent to browse and purchase specific home-goods products, including the Ripple Performance Pillow Aqua, and the abcDNA Mohair Herringbone Throw, and other luxury home furnishings. Plaintiff and his roommate are enthusiasts of premium home furnishings and rely on accessible online platforms to independently evaluate product descriptions, compare materials, review sizes and pricing, and complete purchases. His visits to the Website were motivated by a genuine desire to obtain these products and complete purchases he was unable to make due to the Website's accessibility barriers.

6. During each visit, Mr. Rushefsky encountered multiple accessibility barriers that prevented him from meaningfully browsing or purchasing merchandise. NVDA announced product images

only as "graphic," size selectors only as unlabeled buttons, and the "Add to Cart" control without any accessible name or purpose. As a result, he could not determine product details, could not select his preferred size or color variant, and could not add any item to his cart. Defendant provided no accessible alternative means for blind consumers to obtain the same information.

7. Accessibility audits confirm the barriers Mr. Rushefsky personally encountered. Due to Defendant's bot-blocking technology and dynamic JavaScript rendering, automated tools such as WAVE and SortSite cannot generate stable or reliable reports on www.abchome.com. Accordingly, a comprehensive manual accessibility audit was conducted by Christopher Vaughan, an accessibility expert utilizing NVDA screen-reader software, keyboard-only navigation, and direct inspection of the Website's underlying HTML and ARIA source code. That audit reveals pervasive WCAG 2.1 Level AA violations across www.abchome.com, including missing alternative text on all primary product images and color-variant thumbnails, empty and unlabeled interactive buttons, unlabeled size and color selection controls, missing form labels, broken ARIA references, improper heading structure, low-contrast text, non-descriptive links, and keyboard navigation barriers. These findings confirm that the Website's inaccessibility is systemic and pervasive, not isolated. Exhibit B

8. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Mr. Rushefsky—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and advantages, in violation of Title III of the Americans with Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law. Defendant has previously been sued for website accessibility violations—*Douglass v. ABC HOLDCO LLC*, No. 2:23-cv-01384 (W.D. Pa.)—yet has failed to remediate its Website despite actual notice of its legal obligations.

9. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 Executive Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") § 296 et seq., and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

13. Defendant ABC HOLDCO LLC conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling luxury home furnishings, rugs, décor, textiles, and related products to New York consumers through its highly interactive retail Website, www.abchome.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed

at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

14. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

15. Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of his irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions independently.

16. Upon information and belief, ABC HOLDCO LLC, headquartered at 888 Broadway, New York, NY 10003 is a privately held Delaware limited liability company with no publicly disclosed

subsidiaries or affiliated operating entities. ABC HOLDCO LLC appears to function as a single-entity retail operator responsible for the ownership, control, and maintenance of the ABC Carpet & Home brand and its e-commerce website, www.abchome.com. No SEC filings, corporate disclosures, or public records indicate that ABC HOLDCO LLC is a publicly traded company or that it maintains any subsidiary LLCs. ABC Carpet & Home is a high-volume luxury home furnishings retailer generating approximately $93.3 million in annual revenue and is responsible for ensuring that its Website is designed, coded, and maintained in a manner accessible to individuals who rely on screen-reading technology. Defendant has previously been sued for website accessibility violations in *Douglass v. ABC HOLDCO LLC*, No. 2:23-cv-01384 (W.D. Pa.), providing actual notice of its obligations under the ADA and confirming that Defendant was aware of accessibility requirements prior to Plaintiff's attempts to use the Website.

17. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review descriptions, select configurations, access promotions, and complete purchases. The Website includes detailed product pages—such as the Ripple Performance Pillow Aqua, the abcDNA Mohair Herringbone Throw, and other luxury home goods—that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is accessible to blind and visually impaired individuals who rely on screen-reading technology.

18. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

19. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

20. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

21. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

22. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

23. Plaintiff Glen Rushefsky is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28

C.F.R. § 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

24. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> *"The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."*

*See also* American Foundation for the Blind, Screen Readers, AFB Technology Guide (last accessed June 12, 2025), noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

25. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

- Missing text equivalents for non-text elements
- Unlabeled frames and navigation regions
- Scripts without accessible alternatives
- Inaccessible forms and input fields
- Content conveyed solely through visual presentation
- Inability to resize text without loss of functionality
- Time limits that cannot be adjusted or disabled
- Missing or ambiguous page titles
- Links lacking descriptive context
- Keyboard focus indicators that are not discernible
- Undetectable default language settings
- Components that trigger unexpected context changes
- Settings that alter context without user notice
- Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts
- Improperly nested markup, duplicate attributes, and non-unique IDs
- Inaccessible Portable Document Format (PDF) files
- User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology)

## STATEMENT OF FACTS

26. Plaintiff GLEN RUSHEFSKY is a legally blind consumer residing in Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-

Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of this permanent impairment, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions.

27. LHON is a permanent, non-reversible condition for which there is no curative treatment. Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28. In 2026, Plaintiff became interested in purchasing several premium home furnishings from ABC Carpet & Home, including the Ripple Performance Pillow Aqua and the abcDNA Mohair Herringbone Throw. Plaintiff and his sighted roommate share an apartment in the Bronx, and his roommate entrusted him with selecting textiles and soft furnishings for their living room. Plaintiff has been intentionally curating décor that follows an ocean-inspired theme, incorporating cool blue-green tones and soft textures to create a calming environment. Plaintiff selected ABC Carpet & Home because of its reputation as a high-end luxury home design destination offering unique, curated furniture and décor pieces not available in big-box retail stores. ABC Carpet & Home's website presents detailed product pages, artisan descriptions, and premium materials that are particularly valuable to blind consumers who rely on accessible digital information to evaluate luxury home goods.

29. On December 16, 2025, using NVDA on his Windows computer, Plaintiff navigated directly to the Ripple Performance Pillow Aqua product page on www.abchome.com by activating

a link labeled "Ripple Performance Pillow Aqua" from the site's product listings. NVDA announced the page title but failed to provide accessible information for core interactive elements. The main product image appeared only as "graphic," without any alt text describing the pillow's color ("Aqua"), the "Ripple" pattern, or whether the image depicted the front, back, or a detail view. Because Plaintiff is blind and cannot visually perceive color, pattern, or texture, the absence of alt text deprived him of the only means available to understand the pillow's visual attributes. When he attempted to move to the "Description & Details" section, NVDA encountered non-semantic clickable text that was not coded as a heading, causing the section to appear silent or inaccessible. Size information ("18" x 18"") and lead-time information ("Arrives in 9–11 weeks") were embedded in unlabeled containers, preventing NVDA from announcing them consistently or associating them with any interactive controls. The size selector buttons—representing the 18" x 18", 22" x 22", and 30" x 30" variants—rendered as unlabeled buttons with no accessible name, making it impossible for Plaintiff to determine which size he was selecting or whether his selection had been registered. The "Add to Cart" control appeared only as an unlabeled "button," and when Plaintiff activated it, NVDA provided no confirmation that any item had been added to the cart. Non-descriptive links including "More…," "Add to Wishlist," and "Print Tear Sheet" provided no indication of their function or destination. Because of these missing labels, empty links, and unlabeled interactive controls, Plaintiff could not confidently identify the pillow's attributes, confirm its size or availability, or execute a successful "Add to Cart" action.

30. On December 17, 2025, Plaintiff returned to www.abchome.com intending to select and purchase the abcDNA Mohair Herringbone Throw, an ABC exclusive textile priced at $475.00 and available in two color combinations: Aqua/Green and Coral/Garnet. NVDA announced the page heading but once again failed to provide accessible information for core interactive elements. The main product image and color-variant thumbnails were announced only as "graphic" or "link," without any alt text identifying the color combinations (including Aqua/Green and Coral/Garnet).

Because Plaintiff is blind and cannot visually perceive color, pattern, or texture, the absence of alt text prevented him from determining which color variant matched his décor theme or coordinated with the Ripple Performance Pillow Aqua he intended to purchase. The "Description & Details" section was not properly coded as a heading or labeled element, causing NVDA to skip or truncate essential information such as mohair/wool blend composition, warmth level, care instructions, and construction quality. Lead-time information appeared in unlabeled containers, preventing NVDA from announcing it reliably. The color selector controls—corresponding to the Aqua/Green and Coral/Garnet variants—were not exposed to NVDA with accessible names or ARIA roles, making it impossible for Plaintiff to determine which color he was choosing or whether any selection had been registered. The "Add to Cart" control appeared only as an unlabeled "button," and activation produced no audible confirmation. Because of these missing labels, empty links, and unlabeled interactive controls, Plaintiff could not determine which color variant he was selecting, whether the throw met his needs, or whether any item had been successfully added to his cart.

31. On February 10, 2026, Plaintiff attempted to browse additional home furnishings on www.abchome.com, navigating to the Rugs & Carpets collection page to compare textiles and décor options for his living room. The browsing page presented numerous product tiles and filter options that, for sighted users, display product names, images, list prices, and color variants spanning 2,485 listed items. When Plaintiff navigated this page with NVDA, most product images were announced only as "graphic" or "image error," without any alt text identifying the product displayed—for instance, no description of the rug's color, construction, or design was conveyed, only the generic screen-reader announcement "graphic." Product names and prices appeared inconsistently in the reading order; in multiple instances, NVDA read a price (such as "$10,900" or "$34,500") without associating it with any particular product name, because these elements were separated by empty links and improperly structured markup. Filter and sort controls labeled visually as "Color," "Material," "Price," and "Sort By" were not exposed as properly grouped form controls;

NVDA announced them as isolated "button" or "list box" elements with no clear relationship to the underlying options. Because essential filters and sort options were not announced in a coherent way, Plaintiff could not meaningfully refine results by color, material, or price range, nor could he reliably move between individual product tiles to compare luxury items. The combination of missing image descriptions, empty links, and unlabeled filter controls prevented him from identifying specific products, comparing prices, and narrowing results by color or material.

32. The persistent and page-specific accessibility barriers Plaintiff encountered are confirmed and documented by the manual accessibility audit conducted by Christopher Vaughan (the "Vaughan Audit"). Because Defendant's website employs bot-detection and dynamic JavaScript rendering that prevent reliable use of automated scanning tools such as WAVE and SortSite, Mr. Vaughan conducted his audit using direct keyboard navigation with NVDA screen-reader software and hands-on inspection of the Website's underlying HTML and ARIA source code. This methodology mirrors the actual experience of a blind user such as Mr. Rushefsky, providing a legally reliable record of the barriers encountered on the Website.

33. On the Ripple Performance Pillow Aqua product page, the Vaughan Audit identified the following specific WCAG 2.1 Level AA violations:

**(a) Missing Alternative Text (WCAG 1.1.1):** All primary product images and color-variant thumbnail images carry no alt attribute or carry a null/empty alt attribute, causing NVDA to announce each image only as "graphic" with no descriptive content. A blind user cannot determine the pillow's visual appearance, color, pattern, or texture from the screen-reader output alone.

**(b) Unlabeled Size Selection Controls (WCAG 1.3.1, 4.1.2):** The size selector buttons—representing the 18" x 18", 22" x 22", and 30" x 30" variants—render as buttons with no accessible name. NVDA announces each control as "button," providing no indication of which size it represents or whether it is currently selected.

**(c) Empty / Unlabeled "Add to Cart" Button (WCAG 4.1.2):** The "Add to Cart" interactive control carries no programmatic accessible name. NVDA announces it as "button" without any indication of its function. Upon activation, no audible confirmation is provided to the user that any item has been added to the shopping cart.

**(d) Non-Semantic "Description & Details" Toggle (WCAG 1.3.1):** The section toggle for product description and detail information is implemented as non-semantic clickable text rather than a properly coded heading or ARIA-labeled disclosure widget. NVDA skips or silently passes through this element, depriving blind users of critical product information including materials, dimensions, and care instructions.

**(e) Unlabeled Shipping Estimator Form Fields (WCAG 1.3.1, 3.3.2):** The country and postal code input fields within the shipping estimator are not associated with programmatic labels. NVDA announces these fields without any label context, making it impossible for a blind user to determine what information is requested or how to interact with the estimator.

**(f) Non-Descriptive Links (WCAG 2.4.4):** Links including "More…," "Add to Wishlist," "Print Tear Sheet," and "Share" provide no meaningful description of their purpose or destination. A screen-reader user cannot determine the function of these controls from their accessible names alone.

**(g) Unlabeled Lead-Time Information Container (WCAG 1.3.1):** Shipping and availability information, including lead-time details such as "Arrives in 9–11 weeks" and "Final Sale" designations, is embedded in unlabeled containers not associated with any form control or heading. NVDA cannot reliably announce this information or associate it with the product being viewed.

On the abcDNA Mohair Herringbone Throw product page, the Vaughan Audit identified the following specific WCAG 2.1 Level AA violations:

**(a) Missing Alternative Text on Product and Color-Variant Images (WCAG 1.1.1):** All primary product images and color-variant thumbnail images carry no descriptive alt text. NVDA

announces each image as "graphic" or "link" with no content describing the color combination (Aqua/Green or Coral/Garnet), the herringbone weave pattern, or the mohair texture. A blind user cannot identify which color variant is displayed or what the throw's visual characteristics are.

**(b) Unlabeled Color Selection Controls (WCAG 1.3.1, 4.1.2):** The color selector controls—corresponding to the Aqua/Green and Coral/Garnet variants—are not exposed to NVDA with accessible names or ARIA roles. NVDA announces each control without identifying which color it represents or whether it is currently selected, making independent color selection impossible for a blind user.

**(c) Empty / Unlabeled "Add to Cart" Button (WCAG 4.1.2):** The "Add to Cart" control carries no programmatic accessible name and provides no audible confirmation upon activation. NVDA announces the control as "button," and the user receives no feedback indicating whether a selection has been registered or an item added to the cart.

**(d) Non-Semantic "Description & Details" Toggle (WCAG 1.3.1):** As on the Ripple Performance Pillow page, the product description and detail section is implemented as non-semantic clickable text. NVDA cannot identify or interact with the element as a disclosure widget, causing critical information about the mohair/wool blend composition, warmth rating, care instructions, and construction to be skipped or truncated.

**(e) Missing Form Labels for Configuration Controls (WCAG 1.3.1, 3.3.2):** All configuration inputs—including color selection and any quantity fields—lack associated programmatic labels. A screen-reader user cannot determine what each control governs or what value has been selected.

**(f) Non-Descriptive Links (WCAG 2.4.4):** As on the Ripple Performance Pillow page, links including "Add to Wishlist," "Print Tear Sheet," and "Share" carry no meaningful accessible names.

On the Rugs & Carpets collection browsing page, the Vaughan Audit identified the following specific WCAG 2.1 Level AA violations:

**(a) Missing Alternative Text on All Product Tile Images (WCAG 1.1.1):** All product thumbnail images within the 2,485-item collection grid carry no alt text. NVDA announces each image as "graphic" or "image error" with no descriptive content identifying the rug's color, design, pattern, or material. A blind user cannot distinguish one product from another based on screen-reader output from product images alone.

**(b) Product Names and Prices Disassociated by Empty Links and Improper Markup (WCAG 1.3.1):** Within individual product tiles, the product name and price are separated by empty links and improperly structured markup. NVDA announces prices (such as "$10,900" or "$34,500") without associating them with the corresponding product name, making comparison shopping impossible.

**(c) Unlabeled Filter and Sort Controls (WCAG 1.3.1, 4.1.2):** The "Color," "Material," "Price," and "Sort By" filter and sort controls are not implemented as properly grouped, labeled form controls. NVDA announces them as isolated "button" or "list box" elements with no programmatic relationship to the underlying filter options, preventing a blind user from meaningfully refining search results.

**(d) Empty Links Throughout the Product Grid (WCAG 2.4.4):** Numerous empty or non-descriptive links appear throughout the product grid, providing no context for their destination or function.

**(e) Broken ARIA References (WCAG 4.1.2):** Multiple interactive elements reference ARIA attributes or roles that are either absent or incorrectly implemented, causing landmark regions and control groups to be announced inaccurately or not at all by NVDA.

34. The accessibility violations documented in the Vaughan Audit demonstrate that Defendant's Website's inaccessibility is pervasive, not isolated. The same categories of defects—missing alternative text on all key product images and variant thumbnails, empty or unlabeled buttons and links, broken ARIA references that prevent screen readers from properly identifying

landmarks and groups, missing form labels for size, color, and filter controls, and non-descriptive interactive elements—appear simultaneously on the Ripple Performance Pillow Aqua page, the abcDNA Mohair Herringbone Throw page, and the Rugs & Carpets collection browsing page, demonstrating that Defendant has failed to implement industry-standard accessibility practices across its core e-commerce flows.

35. As a direct result of these page-specific barriers, Mr. Rushefsky was unable to browse products, activate filters, read complete descriptions, select sizes or color configurations, or access essential information needed to evaluate or purchase the luxury home goods he was specifically interested in. On the Rugs & Carpets collection browsing page, the lack of alt text, unlabeled filter selectors, and improperly structured product tiles prevented him from narrowing results or identifying specific products by color or material. On the Ripple Performance Pillow Aqua product page, unlabeled size controls, a missing "Add to Cart" label, and a non-semantic product description toggle made it impossible for him to determine which size he was choosing, whether any item had been added to his cart, or what the full product description disclosed. On the abcDNA Mohair Herringbone Throw product page, missing alt text on color-variant thumbnails, unlabeled color selection controls, and an empty "Add to Cart" button made it impossible for him to determine which color variant he was selecting or whether any item had been successfully added to his cart. His exclusion from these specific transactions was real, repeatable, and directly caused by Defendant's failure to implement industry-standard accessibility practices.

36. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, promotional content, customer reviews, filtering and sorting tools, and checkout functionality. Defendant relies on www.abchome.com to market and distribute its products nationwide, including to consumers in New York, and to sell both full-price luxury items and

collection-specific products such as the Ripple Performance Pillow Aqua and the abcDNA Mohair Herringbone Throw.

37. On information and belief, Defendant has operated www.abchome.com without implementing WCAG-compliant accessibility protocols. Despite long-standing federal guidance and the widespread availability of both automated testing tools and qualified manual accessibility auditors, Defendant has not remediated the barriers identified on the Ripple Performance Pillow Aqua page, the abcDNA Mohair Herringbone Throw page, or the Rugs & Carpets collection browsing page. The very same categories of issues—missing alt text on critical product imagery, empty and unlabeled buttons and links, missing form labels for size, color, and filter controls, broken ARIA relationships, and insufficient color contrast—persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired users.

38. Plaintiff's intent to return to www.abchome.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products (the Ripple Performance Pillow Aqua and the abcDNA Mohair Herringbone Throw), specific attempted transactions on specific pages, and specific functional needs arising from his blindness, including the need for accessible size and color selectors, clearly labeled "Add to Cart" controls, and readable descriptions and reviews.

39. Plaintiff continues to seek the Ripple Performance Pillow Aqua, a product he researched extensively and attempted to purchase during his prior visits. The product is offered in multiple sizes (18" x 18", 22" x 22", and 30" x 30") with detailed specifications and pricing that are available only on the Ripple Performance Pillow Aqua product page on www.abchome.com. Because Plaintiff cannot visually inspect home furnishing products in stores or read printed packaging, he depends entirely on accessible online product pages to evaluate features such as size options, materials, pricing, and availability. Once Defendant remedies the alt-text deficiencies, properly

labels the size selection controls, and exposes the "Add to Cart" function to screen readers, Plaintiff intends to return to that specific product page, select a size, and complete the purchase.

40. Plaintiff also remains interested in purchasing the abcDNA Mohair Herringbone Throw, which he attempted to evaluate during his December 17, 2025, visit. This product is offered in two color combinations (Aqua/Green and Coral/Garnet) at a price of $475.00, with critical materials and care information contained on the dedicated product page. For a blind consumer, the ability to distinguish between color variants, understand the materials and warmth characteristics of the throw, and confirm the price associated with each variant is essential to making an informed purchasing decision. Plaintiff intends to revisit the abcDNA Mohair Herringbone Throw page to confirm color availability, review product specifications in an accessible format, and complete the purchase once the Website presents labeled color controls, accessible "Add to Cart" and checkout functions, and properly structured product information.

41. Plaintiff's need for accessible online shopping is permanent and ongoing. His LHON-related vision loss prevents him from browsing physical retail stores, reading packaging, or visually inspecting home furnishing products. As a result, he relies exclusively on accessible e-commerce platforms to evaluate and purchase products. ABC HOLDCO's Website offers a broader, more current, and more detailed selection of premium luxury home goods, including hand-crafted and one-of-a-kind items such as the Ripple Performance Pillow Aqua and the abcDNA Mohair Herringbone Throw, making it a particularly valuable resource for blind consumers seeking accessible options in the luxury home furnishings marketplace.

42. Plaintiff's prior attempts to shop on the Website were genuine and purposeful, motivated by his desire to purchase the Ripple Performance Pillow Aqua and the abcDNA Mohair Herringbone Throw on the specific product pages he visited on December 16, 2025, December 17, 2025, and February 10, 2026. On each occasion, he attempted to read product descriptions, review specifications, select sizes and color configurations, and add items to his cart but was prevented

from doing so by concrete, page-level accessibility barriers affecting product images, size and color selectors, filter controls, and "Add to Cart" functionality. His inability to complete these transactions does not diminish his interest in the Website; it reinforces his motivation to return once those specific barriers are removed so that he can buy the exact products he originally sought.

## CLASS ACTION ALLEGATIONS

43. Plaintiff GLEN RUSHEFSKY brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

44. All legally blind individuals in the United States who have attempted to access www.abchome.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

45. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

46. All legally blind individuals residing in the State of New York who have attempted to access www.abchome.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

47. Common questions of law and fact exist among the Class, including:

- Whether www.abchome.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace

48. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

49. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

50. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

51. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

52. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

## FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

53. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

55. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

56. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

58. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and

59. A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

60. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.abchome.com, has not been provided services that are provided to other patrons

who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, manual audit findings, and industry-standard compliance methodologies. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

61. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section "Prayer For Relief" below.

**SECOND CAUSE OF ACTION**
**(Violation of New York State Human Rights Law ("NYSHRL"))**

62. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 et seq., covers the actions of the Defendants.

64. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

65. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.abchome.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

66. Plaintiff has visited the Website, www.abchome.com, on a number of occasions and has encountered barriers to his access that exist.

67. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

68. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

69. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

70. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

71. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

72. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

73. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

74. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law ("NYCRL"))**

75. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

77. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold

from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

78. "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision." N.Y. Civ. Rights Law ("NYCRL") § 40-c.

79. § 292 of Article 15 of the N.Y. Executive Law deems a disability, "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

80. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.abchome.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

81. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

82. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

83. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

84. Plaintiff and the Sub-Class hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

## FOURTH CAUSE OF ACTION
**(Violations of the New York City Human Rights Law ("NYCHRL"))**

85. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

87. Defendant is subject to NYCHRL because it owns and operates the Website, www.abchome.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

88. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

89. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 et seq. from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

90. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

- constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or
- constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or
- failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

91. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

92. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

93. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

94. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

95. Plaintiff is also entitled to reasonable attorneys' fees and costs.

96. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

97. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

99. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;
- A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;
- A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with

disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

- An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;
- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;
- Pre-judgment and post-judgment interest;
- An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and
- Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
September 17, 2026

**JOSEPH & NORINSBERG, LLC**
By: *<u>/s/ Robert Schonfeld</u>*
Robert L. Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
Tel: (212) 227-5700
rschonfeld@employeejustice.com
Attorneys for Plaintiff